**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **PARUS HOLDINGS, INC.,**<br>**Plaintiffs,**<br><br>*v.*<br><br>**MICROSOFT CORPORATION,**<br>**Defendant.** | **6:21-CV-00570-ADA**<br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM OPINION AND ORDER

Came on for consideration this date is Defendant Microsoft Corporation's ("Microsoft")

Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Western District of Washington

(the "Motion"). ECF No. 29. Plaintiff Parus Holdings, Inc., ("Parus") filed an opposition on May

2, 2022, ECF No. 59, to which Microsoft replied on May 16, 2022. ECF No. 62. After careful

consideration of the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS**

Microsoft's Motion to Transfer Venue to the Western District of Washington.

### I. BACKGROUND

Parus filed this action against Microsoft on June 4, 2021, ECF No. 1, and filed a First

Amended Complaint ("FAC") on August 11, 2021. ECF No. 18. Microsoft answered the FAC on

August 26, 2021. ECF No. 20. Parus then requested leave to file a Second Amended Complaint

("SAC") to add an additional patent, to which Microsoft consented, on September 29, 2021. ECF

No. 23. Microsoft responded to the SAC on November 15, 2021. ECF No. 28. Parus accuses

Microsoft of infringing U.S. Patent Nos. 6,721,705 (the '705 patent) and 8,185,402 (the '402

patent) (collectively, the "Asserted Patents"). ECF No. 23-1 ¶ 21. The Asserted Patents share a

specification and are related. *Id.* ¶ 16. The SAC lists these products as the "Accused Products":

"the Microsoft Surface, Windows 10 Operating System, and Windows 10 Mobile Operating

1

System." *Id.* ¶ 21. The SAC alleges that the Accused Products infringe because they include Cortana, which Parus claims can use voice recognition software to perform an internet search using Bing. *Id.* ¶¶ 26-42, 47-55. For example, the Windows operating systems are accused because they include Cortana. *Id.* ¶ 21 ("...each of these products infringed through the use of Cortana..."). Thus, Microsoft asserts these products be called "Relevant Products": Cortana, Bing used in conjunction with Cortana, and Microsoft Surface products that can run Cortana ("Surface Devices").

In its Motion, Microsoft claims that:

- Microsoft is a Washington corporation, headquartered in Redmond, Washington, and has no relevant witnesses, facilities, or documents in this District. *Id.* at 1.

- Microsoft's specific witnesses identified in its Motion are all located within the Western District of Washington ("WDWA"). *Id.*

- The teams responsible for the Accused Products identified in the SAC are based primarily in Redmond and Bellevue, Washington. *Id.*

- Parus has no connection to the WDTX. Parus is incorporated in Delaware and has its principal place of business in Illinois. *Id.*

On June 8, 2022, Microsoft filed its Motion to Transfer, citing, among others, those facts above. ECF No. 29. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might

have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. When analyzing these factors, courts may consider facts arising after plaintiff filed suit unless there is some suggestion that they arose primarily to affect the transfer analysis. *See Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) (explaining how post-complaint facts must be disregarded when considering § 1404(a)'s preliminary question, but not when evaluating

convenience); *In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021) (disregarding, under the practical-problems factor, later-filed cases in the transferor district).

The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the movant "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A.    Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-

ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). A defendant does not satisfy this burden by merely consenting to jurisdiction in the transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960). And the defendant cannot, only for purposes of satisfying § 1404(a), concede that jurisdiction in the transferee forum is proper while simultaneously "maintaining that jurisdiction is legally improper in [the transferee forum] and reserving its right to seek dismissal" on that ground once transfer is complete. *Monolithic Power Sys.*, 2022 WL 958384, at *5; *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

This Court finds that this Action could have been brought in the WDWA. *See* ECF No. 29 at 7. Parus does not contest this but concedes in its Complaint that Microsoft has its principal place of business in Redmond, Washington. ECF No. 1 ¶ 3. Thus, Venue is proper in the WDWA, because the WDWA may exercise personal jurisdiction over Microsoft. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because Parus could have filed this case in the WDWA, the Court must consider the private and public interest factors. *Volkswagen II*, 545 F.3d at 315.

### B.   Private Interest Factors

#### 1.   Cost of Attendance and Convenience of Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order

5

to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See In re Google LLC*, 2021 WL 4427899, at *12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance no matter if the action is transferred or not. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

*Willing Witnesses in WDWA.* Microsoft asserts that "the overwhelming majority of Microsoft's witnesses who have information about the Relevant Products" are in the WDWA. ECF No. 30 ¶¶ 8-13. Microsoft also explains that it undertook an investigation into the Relevant Products to identify specific witnesses who will likely testify in this case. ECF No. 29 at 2. Microsoft explains that once it identified specific personnel, it analyzed its human resource records for the people who are in the same "Cost Center" as the witnesses. *Id.* A█████████████████ █████████████████████████████████████████████ *Id.* at 4 n.2.

6

Supported by a declaration from Tara Eaves, a Human Resources Data Analyst Group Manager at Microsoft, ECF No. 30 ¶ 1, Microsoft identified six specific witnesses from the WDWA who have relevant information and are likely to testify in this case. ECF No. 29 at 3. It also identified the number of employees in the same Cost Centers as the specific witnesses and where those witnesses are located. *See* ECF No. 30 ¶¶ 7-13. Jonathan Hamaker is a Software Engineering Manager for Cortana with knowledge of research, design, and development aspects of Cortana. ECF No. 59-1 at 20. ▮ employees, including Mr. Hamaker work in the same Cost Center, and ▮ of those employees work in King County, Washington (located in the WDWA) ECF No. 30 ¶ 8. William Baer is the Product Marketing Manager for Cortana; ▮ employees work in the same Cost Center as Mr. Baer and ▮ of those employees work in King County. *Id.* ¶ 9. Heiko Rahmel is a Principal PM Manager for Speech; Mr. Rahmel and ▮ other employees work in the same Cost Center, and ▮ of those employees work in King County. *Id.* ¶ 10. Andrew Oakley is a Principal PM Manager for Bing; he and ▮ other employees out of the ▮ total who work in the same Cost center work in King County. *Id.* ¶ 11. Fabrice Canel is Principal Program Manager for Bing; all the ▮ employees in his same Cost Center work in King County. *Id.* ¶ 12. Ryan Asdourian is a Subsidiary BG Lead for Surface with knowledge of marketing for Surface; ▮ employees, including Mr. Asdourian, are in the same Cost center, and ▮ of those employees work in King County. *Id.* ¶ 13.

Parus argues that these are "cherry-picked results" that cannot be used to establish that transfer is *clearly* more convenient. *See* ECF No. 59 at 5 (emphasis in original). In support, Parus introduces evidence to try to controvert each specific witness's relevance. *See id.* at 7–8. For example, Parus asserts that Mr. Hamaker's "role today no longer includes the underlying speech and natural language systems for Cortana[.]" ECF No. 59 at 8 (citing ECF No. 59-1 at 21). But

within the same document cited by Parus for support, Microsoft also explains that Mr. Hamaker was one of the first technical staff working on Cortana and held the role of technical lead for the e2e speech and natural language systems and solutions for Cortana in its first 4 years. ECF No. 59-1 at 21–22. Mr. Hamaker is also responsible for the Bing Answer Skill for Cortana. *Id.*

Parus further argues that Mr. Rahmel merely "collaborated closely with the Cortana product team." ECF No. 59 at 8 (citing ECF No. 59-1 at 22). But Microsoft explains that Mr. Rahmel has worked for 11 years as the Principal Program Manager Lead/Principal PM Architect on Speech, working on driving key features of core speech recognition technology as well as the integration of speech recognition technology into 1st and 3rd party applications, including Cortana. ECF No. 59-1 at 21–22. Ryan Asdourian "has knowledge of marketing for Surface products," but Parus alleges that Microsoft did not explain if Surface marketing in particular is important as it relates to Cortana. ECF No. 59 at 8. Even if the Court accepts Parus's argument that Mr. Asdourian may not be relevant, the Court is satisfied that at least five of these witnesses- Mr. Hamaker, Mr. Baer, Mr. Rahmel, Mr. Oakley, and Mr. Canel- work from the WDWA, that they have relevant knowledge, and that the WDWA is a more convenient forum for these personnel.

Parus challenges that the Cost Centers as a reliable way to identify relevant witnesses. ECF No. 59 at 6. But the Court has already found that Microsoft Cost Centers are relevant for determining potential witnesses. *Interactive Graphic Sols. LLC v. Microsoft Corp.*, No. 21-462-ADA, 2022 WL 1314462, at *3 (W.D. Tex. Apr. 20, 2022). Parus then asserts that even if Cost Centers are relevant, that Microsoft failed to distinguish "relevant" employees from others in the same Cost Center located outside Washington. *See, e.g.*, ECF No. 59 at 7 (citing ECF No. 59-3 at 1 (indicating witnesses in California, Massachusetts, and South Carolina)); *see also id.* (citing ECF No. 59-3 at 1 (arguing that ███████ other Product Marketing professionals, apart from Mr.

Baer, are within the same Cost Center, four outside Washington)). First, the Court finds that witnesses living in Massachusetts and South Carolina are too remote from this District and the WDWA to have much effect under this factor. *See In re Apple*, 979 F.3d at 1342 (citing *In re Genentech,* 566 F.3d at 1344 ("the 100-mile rule 'should not be rigidly applied' where witnesses 'will be required to travel a significant distance no matter where they testify'); *see also In re Google, LLC*, 2021 WL 4427899, at *4 ("Our cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer"). Also, using Parus's argument, ▮▮ witnesses within the same Cost Center as Mr. Baer are located outside of Washington, but ▮▮ ▮▮ witnesses are in King County. ECF No. 59-3 at 1. Thus, the evidence establishes there are more witnesses located in the WDWA.

Lastly, Parus asserts that Microsoft "hides behind privilege to avoid providing any information on their 'investigation,' so neither Parus nor the Court have any basis to know if their investigation is reliable. *Id.* (citing ECF No. 59-7 at 14). To be sure, if parties believe the opposing party failed to provide discovery, parties should timely seek appropriate relief. Yet, while the Court takes issue with parties using privilege to attempt to avoid providing important discovery, the Court does not agree with Parus's assertion that the Court has no basis to know if the investigation is reliable. Based on the record before it, Microsoft provided sufficient information to show that the potential witnesses Microsoft identified in the WDWA are relevant and Parus did not provide contradictory evidence to show otherwise. The Court is satisfied that the potential witnesses have relevant and material information, and that is all the Court can demand at this point. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

*Willing Witnesses in WDTX.* As discussed, Parus questions Microsoft's choice of relevant witnesses. Parus argues that it has identified multiple relevant Microsoft employee witnesses in Texas. ECF No. 59 at 9. But the only evidence Parus cites to as support for these assertions are the individuals' LinkedIn profiles. *Id.* Indeed, Parus asserts that "[p]ublic information shows that each of these employees have knowledge of Microsoft's AI functionality, including the infringing voice virtual assistant Cortana." *Id.* But this is not enough to show that these witnesses possess knowledge relevant to the alleged infringement. *In re Google LLC*, 2021 WL 4427899, at *7 (allocating no weight to a potential witness that plaintiff found on LinkedIn because plaintiff "was not at all specific about what testimony it expected to elicit from [that witness], or even if he possesses knowledge of the facts relevant to this infringement action"); *see also Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *20 (W.D. Tex. May 11, 2022) ("Gauging and articulating the relevance of a party's personnel to a particular case—especially personnel from a company the size of Apple—based only on vague LinkedIn profiles is a challenge"). The relevance of these witnesses is far too speculative. The Court, therefore, accords little to no weight to their convenience. The Court similarly gives no weight to Parus's allegations that Microsoft is actively hiring employees to work on the accused technology in this District, as Parus's reliance on public job postings, without more, is too speculative. ECF No. 59 at 10.

Microsoft, along with the employees it identifies in relevant Cost Centers in WDWA, acknowledges that ▮ of its employees who work in relevant Cost Centers work in the WDTX. ECF No. 30 ¶¶ 8, 11, 13; *see also* ECF No. 62 at 3. Microsoft avers, though, that ▮ of those employees do not work on Cortana and have never worked on Relevant Products. *See id.* Parus presents no evidence showing otherwise. Microsoft does concede, however, that one employee, Enrique Mitchell, may have "peripheral" or "minimal" knowledge. ECF No. 62 at 2.

Parus argues also that Alex Kurganov, an inventor of the '705 patent, has agreed to testify willingly in this District. ECF No. 59 at 11. Mr. Kurganov asserts that ███████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ *Id.* ECF No. 59-2 ¶¶ 4–9. Mr. Kurganov lives in ███████████, which he attests is a 28-hour drive to Waco and a 46-hour drive to Seattle, Washington. Yet the Federal Circuit has consistently held that witnesses on one coast are not accorded weight when the transferee district is on the other coast. *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (holding that witnesses in Florida would find Texas no more convenient than California); *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (witnesses in New York find Texas no more convenient than California); *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 WL 126490, at *5 (W.D. Tex. Jan. 12, 2022) (holding that witnesses in Virginia would find Texas no more convenient than California). The Court gives little weight to Mr. Kurganov's indication that he is willing to attend trial in the WDTX but unwilling to attend trial in the WDWA. Regardless of the forum, he would have to travel a significant distance from home. *See In re Apple*, 979 F.3d at 1342 ("the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify").

*Conclusion.* The Court finds that this factor heavily favors transfer. Microsoft identified several Microsoft employees with relevant and material knowledge working in the WDWA. Only one potentially relevant Microsoft employee resides in Texas. Parus also identified one inventor of the '705 patent located in ███████████ who is willing to travel to this District but unwilling to travel to the WDWA because of ███████████. The Court is therefore satisfied that the convenience of the potential witnesses located in the WDWA heavily favors transfer.

2.   Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network LLC*, No. 2021-182, 2021 WL 4911981, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally,

12

evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

This factor weighs heavily in favor of transfer. It seems to this Court that the majority of employees who work on the Relevant Products are in the WDWA. Microsoft asserts that Microsoft's engineering, sales, and financial documents are primarily located in the WDWA, and that the majority of employees who work on the Accused products are also there. ECF 30 ¶¶ 6, 8–13. Accordingly, the location of several relevant personnel in the WDWA likely acting as custodians for relevant technical documentation pushes this factor more towards transfer.

Parus contends that Microsoft is "unable or unwilling to identify the location of its relevant documents," thus, the Court cannot adequately determine where the sources of proof are located. ECF No. 59 at 3. The Court disagrees. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████). Microsoft also concedes that it has attempted to find the location of the data center on which documents relevant to this litigation are stored but has been unable to confirm the exact location of all such documents. ECF No. 59-4 at 20. ████████████████████████████████

████████████████████████████ the Court has already determined that more relevant witnesses are in WDWA than in this District. *See supra* III. B. 1; *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer."). The Federal Circuit has time and again reminded this Court to look to where the custodians of relevant electronic documentation is, as they may bear on the relative ease of access to sources of proof. Thus, the custodians of relevant electronic documentation are in the WDWA. Microsoft

"need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340.

Parus also contends that its documents are "or will be" in Austin, Texas. ECF No. 59 at 4. Parus's CEO, Taj Reneau asserts that "a considerable amount of documents have already been relocated to Austin and are in storage." ECF No. 59-6 ¶ 8. Parus does not identify any specific material in the WDTX. But even if relevant documents are or will be in this District by the time of trial, this Court recognizes, as it has done many times before, that the bulk of relevant evidence in a patent infringement case will come from the accused infringer. *In re Genentech*, 566 F.3d at 1345. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location. *Id.*

*Conclusion.* ███████████████████ is not enough to outweigh the fact that the majority of employees who work on the Relevant Products are in the WDWA, that Microsoft's engineering, sales, and financial documents are primarily located in Redmond, Washington, and that the majority of employees who work on the Accused products are in the WDWA. For those reasons, the Court finds that this factor heavily favors transfer.

### 3.  Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer

when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness").

In its Motion, Microsoft alleges that there are no third-party witnesses yet identified in either the WDWA or the WDTX, and so this factor is neutral. ECF No. 29 at 9. However, Parus identifies multiple potential third-party witnesses in its Response. ECF No. 59 at 11. It explains that Parus was previously "Webley System, Inc." and that multiple former employees with "knowledge of the company, software engineering, and more" reside in the state of Texas. *Id.* Pavel "Paul" Leonovich, a senior software engineer familiar with the Webley voice application development, resides in the Austin area. *Id.* John Ackelbein, former VP of sales at Webley, possesses knowledge of the features of the Webley personal assistant and was responsible for all business-to-business

15

sales and resides in the Dallas area. *Id.* Hal Poel, former marketing executive of Webley, possesses relevant knowledge related to the telecom features of the Webley product, resides in Sugar Land, and Parus alleges he will testify in Waco. *Id.*[1] Parus also identifies six prior art witnesses within the Dallas-Fort Worth Metroplex, potentially within the subpoena power of this Court; while only one prior artist has been identified in Washington. ECF Nos. 60-50–60-55; ECF No. 60-56.

Yet Parus, again, cites only to LinkedIn to connect the named third-party witnesses with the Accused Products. *See* ECF Nos. 60-25; 60-65; 60-27; 60-50–60-56. It provides no basis for its assertions that the Webley former employees or the potential prior art witnesses are relevant. *See id.* Microsoft, in its reply, though, does not contest the relevancy of these witnesses. ECF No. 62 at 5. Thus, the Court will accord some weight to these witnesses. *See Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *6 (W.D. Tex. May 25, 2022) (giving weight to prior art witnesses identified in reply because the opposing party did not question their relevance through, for example, a sur-reply). Even given the potential relevancy of the prior artists, though, while this Court will not categorically reject prior art witnesses without considering the facts of the case, it discounts them because prior art witnesses rarely appear at trial. *In re Hulu, LLC*, 2021 WL 3278194, at *3.

Microsoft's only argument against Parus's third-party witnesses is that they are not within this Court's subpoena power, because those witnesses are outside the 100-mile range of this Court.

---

[1] Parus alleges Mr. Ackelbein and Mr. Poel "will testify in Waco," but argues that these non-party witnesses are within this Court's subpoena power. Thus, it is somewhat unclear whether these witnesses are willing or unwilling. Because Parus asserts that these witnesses are within this Court's subpoena power, the Court will evaluate this argument under the "compulsory process" factor. Even if Mr. Poel and Mr. Ackelbein are willing witnesses, though, the Court is satisfied that it would not change its opinion that the willing witness factor weighs heavily in favor of transfer, given their questionable knowledge of relevant information and that more witnesses are in the WDWA.

ECF No. 62 at 5. But under the Federal Rules of Civil Procedure, a court in the Western District of Texas can subpoena a person to attend a trial, hearing, or disposition within the state where the person resides, is employed, or regularly transacts business in person, if the person is commanded to attend a trial and would not incur a substantial expense. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii). Given that Parus identified six prior art witnesses and three former Webley employees all located within Texas, this Court will generally not, at this very early stage of the case, disqualify such witnesses on the ground that they would "incur substantial expense" in traveling to testify. Fed. R. Civ. P. 45(c)(1)(B). *See Honeywell Int'l Inc.*, 2022 WL 2161058.

 *Conclusion*. Parus identifies three former Webley employees and six potential prior artists located in Texas whose relevance, though questionable, goes uncontested by Microsoft. Only one potential prior artist is in the WDWA. Accordingly, the Court finds that this factor weighs against transfer.

   4. <u>Practical Problems</u>

 When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

 "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Stat., Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case

to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as suits filed in the transferor district after a request to transfer. *In re Netscout*, 2021 WL 4771756, at *12. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This case has not proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor biases toward transfer. Parus argues that the presence of three other Parus cases pending in this Court weighs against transfer. ECF No. 59 at 15.[2] But all three of the other Parus cases also have pending motions to transfer, so the Court will not rule that those cases weigh against transfer. *See In re Google*, 2021 WL 5292267, at *3. ("copending suits are not to be over-weighed if they are also subject to motions to transfer."). Given that a lack of facts supporting or disfavoring transfer does not weigh against transfer, the Court will similarly not find that this scenario favors transfer either. *See Interactive Graphic Sols. LLC v. Microsoft Corp.*, No. W-21-CV-00462-ADA, 2022 WL 1314462, at *4 (W.D. Tex. Apr. 20, 2022).

*Conclusion.* Accordingly, the Court finds this factor neutral.

## C.   Public Interest Factors

### 1.   Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That

---

[2] *Parus Holdings Inc. v. Google, LLC.*, No. 6:21-cv-571; *Parus Holdings Inc. v. Apple Inc.*, No. 6:21-cv-968; *Parus Holdings Inc. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-1073.

said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks,* 14 F.4th at 1321. It has further ruled that, if time-to-trial statistics favor one district over another, the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *Id.* 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

The Court finds that this factor favors keeping this Action here. Microsoft argues that this factor is neutral because of the "close similarity of cases per judgeship and average time to trial of the two forums." ECF No. 29 at 11 (citing *In re Hulu*, 2021 WL 3278194, at *5). Microsoft uses the time-to-trial statistics for the WDTX as a whole to compare to the WDWA. ECF No. 29 at 11. (arguing that for the 12-month period ending June 30, 2021, the WDWA had 402 civil actions per judgeship (494 total actions) and the time to trial was 22.2 months, and the WDTX had 336 civil actions per judgeship (997 total actions) and the time to trial was 23.8 months). Parus, however, correctly points out that this Court's average time to trial in this District is faster than in the WDWA. ECF No. 59 at 13–14.

Parus also argues under this factor that Microsoft has had a "recent change in heart" regarding the convenience of this District, given that "of the sixty-four cases involving Microsoft

in this District, Microsoft moved for transfer only twenty-five times." ECF No. 59 at 14. The Court has addressed this argument before. *See Interactive Graphic Sols. LLC*, 2022 WL 1314462, at *4. While this position may carry some weight, each case presents unique facts that may warrant transfer. *See id.* Despite Microsoft's litigation history in this forum, the Court will not automatically assume that this forum is convenient given the unique facts in this case.

*Conclusion.* The Federal Circuit has concluded that the speed of the transferee district should not alone outweigh all other factors. Thus, the Court finds that this factor weighs only slightly against transfer.

## 2. Local Interest

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [the defendant's Austin] offices,

which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion").

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple*, 2022 WL 1676400, at *2 (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

The Court finds that this factor heavily favors transfer. The Federal Circuit has repeatedly admonished this court to focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. Microsoft's headquarters are in the WDWA and the teams that designed and developed the Accused Products are primarily located in the WDWA. ECF No. 29 at 12. The presence of Microsoft's data centers and offices in this District cannot outweigh the presence of Microsoft's headquarters and the fact that the majority of the Accused Products were designed and developed primarily in the WDWA. The Court also attributes no weight to the fact that Parus is in the midst of transferring all operations to the Austin area, ECF No. 29 at 14, given that any presence Parus may have in this District is "recent and ephemeral." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

*Conclusion.* Accordingly, this factor heavily favors transfer.

   3.   The Other Public Interest Factors are Neutral.

The other public interest factors are neutral.[3] This Court and the WDWA are both familiar with patent law. And to the extent any conflicts of law arise, both courts are equally capable of addressing them.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Cost of attendance for willing witnesses | Weighs heavily in favor of transfer |
| Relative ease of access to sources of proof | Weighs heavily in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs against transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Weighs heavily in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The Court gives the "practical problems" factor less weight because the Federal Circuit has held that judicial economic considerations from related cases cannot "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience

---

[3]Microsoft concedes that both the remaining factors- "familiarity of forum with governing law" and "conflict of laws"- are neutral. ECF No. 29 at 12. Parus also concedes that the "conflict of laws" factor is neutral. ECF No. 59 at 15. But Parus argues under the "familiarity of the forum with governing law" factor, that this Court should consider the pendency of Parus's related cases. ECF No. 59 at 15. Parus states, though, that "[f]ederal patent law will apply regardless of where this case is litigated." *Id.* The Court does not interpret Parus's argument regarding co-pendency of related cases as an assertion that either forum is not familiar with the relevant law.

factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). Any judicial economy considerations would be insufficient to outweigh the clear benefits of transfer given the imbalance in the parties' presentations on the other private-interest and public-interest factors. *See In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *5.

The Federal Circuit has also consistently told the Court to diminish the weight given to the docket-congestion factor. Microsoft has more sources of proof and willing witnesses in the WDWA. The WDWA likely has a stronger localized interest because of Microsoft's significant general presence there coupled with significant development and design there. That the WDWA would be unable to subpoena potential witnesses located near this District has not stopped Microsoft from showing that the WDWA is a clearly more convenient venue.

**IT IS ORDERED** that Defendants' Motion to Transfer Venue to the Western District of Washington (ECF No. 29) is **GRANTED**. The Court's Clerk is directed to transfer this Action to the U.S. District Court for Western District of Washington.

SIGNED this 29th day of November, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE